IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIA ANN CALIPO, | ) | Case No. 1:19-cv-50 |
| | ) | |
| Petitioner | ) | |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| v. | ) | RICHARD A. LANZILLO |
| | ) | |
| JOHN E. WETZEL, et al, | ) | MEMORANDUM OPINION AND |
| | ) | ORDER ON PETITION FOR HABEAS |
| Respondents | ) | CORPUS |
| | ) | |

I.    Introduction

Julia Ann Calipo, an individual formerly in the physical custody of the Pennsylvania

Department of Corrections and currently serving the supervised release component of her state

court sentence, initiated this action by filing a *pro se* Petition for Writ of Habeas Corpus by a

Person in State Custody pursuant to 28 U.S.C. § 2254. ECF No. 9. Calipo is challenging her

2016 conviction in the Court of Common Pleas of Erie County on several counts of arson,

insurance fraud, and related charges. Calipo later filed an Amended Petition – the current

operative pleading – raising sixty-one separate grounds for relief. ECF No. 37. Because none of

the grounds for relief merit the grant of federal habeas relief, Calipo's Petition will be denied.[1]

And, because reasonable jurists would not find this disposition debatable, a certificate of

appealability will also be denied.

---

[1] The parties have consented to the exercise of plenary jurisdiction by a United States Magistrate Judge, as
authorized by 28 U.S.C. § 636(c).

II.     Factual Background

The Superior Court of Pennsylvania set forth the factual background of this case as

follows:

>   Appellant's conviction in this case arose from an intentional fire that
>   destroyed her residence at 235 East 32nd Street in Erie, Pennsylvania on
>   February 18, 2015 and a related insurance claim that Appellant
>   submitted to Allstate Insurance Company (Allstate) for loss of dwelling
>   and contents. Prior to these events, Appellant and her children resided at
>   the East 32nd Street residence when a fire damaged the structure in
>   October 2011. At this time, Appellant collected insurance proceeds from
>   Farmers Insurance for losses incurred in the 2011 fire. After the 2011
>   fire, Appellant and her children relocated to another home but returned to
>   the East 32nd Street residence in July 2014. Approximately four months
>   later, on November 20, 2014, Appellant applied to Allstate for
>   homeowners' insurance coverage. Based upon information provided by
>   Appellant, Allstate issued a policy that became effective on December 3,
>   2014.
>
>   Allstate commissioned a home inspection that was scheduled for
>   December 1, 2014. The inspection revealed material misrepresentations
>   by Appellant regarding the condition of the property and the age of
>   improvements to the structure. Based upon the findings of the inspection,
>   Allstate cancelled its policy on the residence effective February 26,
>   2015.
>
>   On February 18, 2015, eight days before the scheduled termination of
>   Appellant's homeowners' coverage, a fire broke out at the East
>   32nd Street residence. The evidence at trial showed that Appellant, and
>   possibly an adult child, were the only individuals who had keys or access
>   to the premises and that Appellant was the last person to leave the
>   residence that evening. Allstate hired a private investigator, Robert Rice,
>   to determine the cause of the fire. Rice determined that the fire was set
>   intentionally and that it was caused by the ignition of a stove that
>   contained an aerosol can and clothing. Guy Santone, Fire Chief for the
>   City of Erie Fire Department, also investigated the fire and agreed with
>   Rice that the fire at the East 32nd Street residence was set intentionally.
>
>   Appellant submitted an insurance claim to Allstate on February 18, 2015.
>   The claim was referred to Allstate's Special Investigative Unit given its
>   suspicious circumstances, including the 2011 fire and the fact that the
>   fire occurred while Appellant's homeowners' policy was in cancellation
>   status. While the investigation was ongoing, Allstate paid certain sums to
>   Appellant. On November 17, 2015, however, Allstate denied coverage

2

> for Appellant's claimed losses due to Appellant's failure to cooperate,
> misrepresentations in Appellant's list of contents and her statement
> under oath, and Allstate's determination that the fire was set
> intentionally.
>
> The Commonwealth filed an amended criminal information on
> September 13, 2016 charging Appellant with arson—endangering
> persons (18 Pa.C.S.A. § 3301(a)(1)(i) ), arson—endangering property
> (18 Pa.C.S.A. § 3301(c)(3) ), risking catastrophe (18 Pa.C.S.A. §
> 3302(b) ), three counts of recklessly endangering another person (18
> Pa.C.S.A. § 2705), and two counts of insurance fraud (18 Pa.C.S.A. §
> 4117(a)(2) and (b)(4) ). Following a three-day trial that concluded on
> September 21, 2016, a jury found Appellant guilty of all charges. On
> November 3, 2016, Appellant received an aggregate sentence of 20 to 40
> months' incarceration, followed by seven years' state probation.

*Commonwealth v. Calipo*, 2018 WL 2437499, at *1 (Pa. Super. Ct. May 31, 2018).[2]  Notably,

Calipo failed to appear on the third day of her trial without informing either the Court or her

attorney of the reason for her absence. *Id.* After a lengthy delay, the trial continued *in absentia*

over the objection of Calipo's trial counsel. *Id.*

On November 11, 2016, Calipo filed a Motion for Post-Sentence Relief claiming that: the

evidence was insufficient to support a guilty verdict; the trial court improperly admitted evidence

of the prior fire at Calipo's residence; the trial court improperly admitted statements made by

Calipo during an Examination Under Oath that she completed as part of Allstate's investigation;

the trial court erred in electing to continue her trial *in absentia*; and the trial court erred in failing

to merge several of her criminal counts for purposes of sentencing. *Calipo*, 2018 WL 2437499,

at *1. The court denied her motion on November 28, 2016. *Id.*

On December 20, 2016, Calipo filed a timely Notice of Appeal. *Id.* Pursuant to Pa.

R.A.P. 1925(b), the trial court directed her to file and serve a concise statement of errors

---

[2] This Court presumes that the Superior Court's factual findings were correct. *See* 28 U.S.C. § 2254(e)(1).

complained of on appeal. *Id.* Calipo complied, and the trial court issued a Rule 1925(a) opinion denying relief on April 13, 2017. *Id.*

The Superior Court of Pennsylvania adopted the trial court's Rule 1925(a) opinion and denied Calipo's appeal on May 31, 2018. *Id.* The court noted that, although Calipo listed 25 issues for review in her appellant brief, many were incoherent and repetitive, and most were not raised in her concise statement. *Id.* Accordingly, the court limited its review to the following issues: the sufficiency and weight of the evidence; the admission of evidence that a prior fire had occurred at the same residence; the admission of the statements that she gave to the insurance investigator during her Examination Under Oath; the continuation of her trial in her absence; and the merger of the charges. *Id.*

On July 2, 2018, Calipo filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court. The court denied Calipo's request on January 23, 2019. *See Commonwealth v. Calipo*, 199 A.3d 341 (Pa. 2018). The instant § 2254 Petition ensued.

In the current proceeding, Calipo raises the following grounds for relief:

| Ground 1: | Lack of Weight and sufficiency of weight of evidence |
|---|---|
| Ground 2: | Trial In Absentia |
| Ground 3: | Entry of a Prior Bad Act |
| Ground 4: | Illegal sentence and Merger |
| Ground 5: | Entry of Contemporaneously Recorded Statements, Heresay, and 2nd Hand Witnessing |
| Ground 6: | Denial of Due Process by Destruction of Exculpatory Fire Scene |
| Ground 7: | Denial of Due Process – Bad Cause Spoliation by Erie City Fire and Police Departments |

4

Ground 8:       Illegal Search and Seizure by Unconstitutional Police and
                Fireman Conduct

Ground 9:       Denial of Due Process by Unauthentic Documents

Ground 10:      Denial of Due Process – Police Perjury

Ground 11:      Cruel and Unusual Punishment by U.S. Marshals

Ground 12:      Cruel punishment and excess bond at Arraignment

Ground 13:      Excess Bond at Preliminary

Ground 14:      Ineffective Pre Trial Counsel – Plea Under Duress

Ground 15:      Ineffective Assistance – Refusal to Defend Due Process

Ground 16:      Denial of Due Process by Pre Trial Prosecutorial Misconduct

Ground 17:      Denial of Due Process – Ban on Pre Trial Counsel

Ground 18:      Ineffective Counsel – Solicitation of False Plea

Ground 19:      Prosecutorial Misconduct and Perjury to Violate Due Process

Ground 20:      Judicial Misconduct – Obstruction of Discovery

Ground 21:      Denial of Due Process by Ex Parte Conspiracy with Corrupt
                Government Officials

Ground 22:      Judicial and Prosecutorial Misconduct to violate Due Process
                Right to Face Accuser

Ground 23:      Denial of Due Process – Prejudiced Jury

Ground 24:      Denial of Due Process by Judge Absent at Certain Levels of
                Trial

Ground 25:      Denial of Due Process by Prosecutorial Misconduct in entry of
                False Witnesses and Evidence

Ground 26:      Denial of Due Process by Judicial Misconduct in Failure to
                Grant Trial Continuance

Ground 27:      Ineffective Trial Counsel – Failure to Defend

Ground 28:          Denial of Due Process and Commonwealth Inflammatory
                    Speech

Ground 29:          Denial of Freedom of Speech

Ground 30:          Denial of Due Process Right to be Pro Se at Trial

Ground 31:          Ineffective Trial Counsel – Dereliction of Duty

Ground 32:          Denial of Due Process – Judicial and Prosecutorial Perjury to
                    Illegally Convict

Ground 33:          Denial of Due Process – Diminished Capacity

Ground 34:          Denial of Due Process – Judge Gave Defective Reasonable
                    Doubt Instruction to the Jury

Ground 35:          Denial of Due Process – Judge Lied to Jury to Gain Illegal and
                    False Conviction

Ground 36:          Denial of Due Process – Judicial Misconduct

Ground 37:          Denial of Due Process – Prosecutorial Misconduct

Ground 38:          Due Process Denial by Judge and Prosecutor Criminal
                    Conspiracy

Ground 39:          Denial of Due Process by Obstruction of Law and
                    Government Function by the High Courts

Ground 40:          Denial of Due Process by Judicial Refusal to Amend
                    Appellate Grounds

Ground 41:          Cruel and Unusual Punishment by Judge Perjury to Deny Post
                    Sentence Bond

Ground 42:          Ineffective Appellate Counsel by Deceptive Practices

Ground 43:          Ineffective Counsel by Failure to Perfect Appellate Brief

Ground 44:          Ineffective Post Conviction Counsel – Ex Parte Conspiracy to
                    Deny Exculpatories

Ground 45:          Ineffective Post Conviction Counsel

Ground 46:        Denial of Due Process by Judicial Misconduct in Judges
                  Refusal to Recuse Himself

Ground 47:        Obstruction of Due Process Justice by High Courts

Ground 48:        Denial of Due Process by Judge and Prosecutors Illegal
                  Concealment of Exculpatories from High Courts and I

Ground 49:        Cruel and Unusual Punishment by Immanent Danger

Ground 50:        Denial of Freedom of Speech and Due Process Access to
                  Courts

Ground 51:        Cruel Punishment and Denial of Due Process by Illegal Search
                  and Seizure

Ground 52:        Violation of Unfair Insurance Practices Act

Ground 53:        Violation of the Federal Uniform Commercial Code

Ground 54:        Violation of the Racketeer Influenced Corrupt Organization
                  Act

Ground 55:        Denial of Right to Bear Arms

Ground 56:        Denial of Constitutional Right to Vote

Ground 57:        Denial of Right to Not Suffer Slavery

Ground 58:        Violation of Federal Prison Rape Elimination Act

Ground 59:        Illegal Search and Seizure in Violation of Federal H.I.P.P.A.
                  Rights

Ground 60:        Cruel and Unusual Punishment and Irreparable Harm

Ground 61:        Violation of the Entire U.S. Constitution when Actually
                  Innocent

ECF No. 37.

Respondents filed an answer to the Petition in which they contend that most of Calipo's

claims have been procedurally defaulted and the rest lack merit. ECF No. 40. Calipo filed a

reply brief, *see* ECF No. 48, rendering this matter ripe for adjudication.

III.    Applicable Legal Standards

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were

'grievously wronged' by the criminal proceedings." *Dunn v. Colleran*, 247 F.3d 450, 468 (3d

Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 141, 146 (1998)). In enacting the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Congress "significantly

limited the federal court's power to grant a writ of habeas corpus." *Tolbert v. Ferguson*, 2019

WL 4677357 at *2 (E.D. Pa. Aug. 8, 2019). Under § 2254, a district court may entertain an

application for a writ of habeas corpus filed by a person in state custody "only on the ground that

he is in custody in violation of the Constitution or laws of the United States." 28 U.S.C. §

2254(a). Moreover, federal courts must give considerable deference to determinations made by

state trial and appellate courts. *See Renico v. Lett*, 599 U.S. 766, 772 (2010). Thus, if a claim

presented in a § 2254 petition has been adjudicated on the merits in state court proceedings,

habeas relief cannot be granted unless:

> the adjudication of the claim (1) resulted in a decision that was contrary
> to, or involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254 (d). It is the habeas petitioner's burden to show that the state court's decision

was contrary to or an unreasonable application of United States Supreme Court precedent and/or

an unreasonable determination of the facts. *Moreno v. Ferguson*, 2019 WL 4192459, at \*3 (W.D. Pa. Sept. 4, 2019).

The United States Court of Appeals for the Third Circuit has emphasized the heavy burden habeas petitioners bear, noting that "even 'clear error'" by the state courts "will not suffice." *Orie v. Sec. Pa. Dept. of Corrections*, 940 F. 3d 845, 850 (3d Cir. 2019). Rather, the state court must be wrong "beyond any possibility for fair-minded disagreement." *Id.* (citations and some internal quotations omitted). Moreover, the factual determinations of the state courts are presumed correct. *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.").

IV.    Analysis and Discussion

A.    Timeliness

Before the Court can address the merits of Calipo's petition, it must first decide whether it was timely filed. *Romansky v. Superintendent Green SCI*, 933 F.3d 293, 298 (3d Cir. 2019). Pursuant to AEDPA, a state prisoner must file his federal habeas claims within one year of the date his judgment of sentence became final. 28 U.S.C. § 2244(d)(1)(A). Because she filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court on direct appeal, Calipo's sentence became final for purposes of the one-year federal habeas statute of limitations on January 23, 2019. The instant 2254 petition, filed just over a month later, was timely by almost eleven months.

B.    Exhaustion and Procedural Default

As a general matter, a federal district court may not consider the merits of a habeas petition unless the petitioner has "exhausted the remedies available" in state court. *See* 28

9

U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A petitioner satisfies the exhaustion requirement "only if [he or she] can show that [they] fairly presented the federal claim at each level of the established state-court system for review." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004). The purpose of the exhaustion requirement is to "give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts ... by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

In order to "fairly present" a claim for exhaustion purposes, the petitioner must advance the claim's "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 280 (3d Cir. 2018) (quoting *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)). A petitioner may exhaust a federal claim either by raising it on direct appeal or presenting it in post-conviction PCRA proceedings. *O'Sullivan*, 526 U.S. at 845. Either way, the petitioner must present his federal constitutional claims "to each level of the state courts empowered to hear those claims." *Id.* at 847 ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"). "Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied." *Stoss v. Estock,* 2019 WL 2160464, at *3 (M.D. Pa. May 17, 2019) (citing *Castille v. Peoples*, 489 U.S. 346, 350 (1989)).

An important corollary to the exhaustion requirement is the doctrine of procedural default. "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of those claims "in

10

the first instance." *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). Procedural default intertwines with exhaustion in the following manner: when a claim has never been "'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied" due to the lack of available state process, but the claims "are considered to be procedurally defaulted." *McKenzie v. Tice*, 2020 WL 1330668, at \*5 (M.D. Pa. Mar. 23, 2020) (quoting *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)). Such claims may not ordinarily be reviewed by a federal court. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) ("[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule.") (citations omitted).

Several caveats exist. First, "[a] state procedural rule can preclude federal habeas corpus review" only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *McKenzie*, 2020 WL 1330668, at \*5 (quoting *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007)). A rule is "independent" if it is not "'so interwoven with federal law' that it cannot be said to be independent of the merits of a petitioner's federal claims." *Id.* (quoting *Johnson v. Pinchak*, 392 F.3d 551, 557 (3d Cir. 2004)). A rule is "adequate" if it was "firmly established, readily ascertainable, and regularly followed at the time of the purported default." *Levya*, 504 F.3d at 366 (quoting *Szuchon v. Lehman*, 273 F.3d 299, 372 (3d Cir. 2001)).

Second, a petitioner can overcome procedural default, thereby permitting federal court review, if the petitioner can demonstrate either: (1) "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law; or (2) that the failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. To demonstrate

11

cause and prejudice, the petitioner must show some objective factor external to the defense that impeded counsel's efforts to comply with a state procedural rule. *Slutzker v. Johnson*, 393 F.3d 373, 381 (3d Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  To demonstrate a fundamental miscarriage of justice, a habeas petitioner must typically show actual innocence. *Schlup v. Delo*, 513 U.S. 298, 324-26 (1995).

Applying these principles, the Court concludes that most of the grounds for relief asserted in Calipo's Amended Petition – specifically, the claims raised in Grounds 6 through 61 – are procedurally defaulted.  The majority of those claims consist of duplicative, overlapping, and conclusory allegations concerning perceived judicial and prosecutorial misconduct, conspiracy, perjured testimony, fraud, concealment of evidence, cruel and unusual punishment, and other assorted misconduct.  Many of these claims are poorly articulated, and none are supported by citations to caselaw or the evidentiary record.  And, most critically, none were "fairly presented" to the state courts on direct appeal or in a PCRA petition for "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Castille*, 489 U.S. at 351.  Because state court review of these claims is now barred by the one-year PCRA statute of limitations, they are procedurally defaulted and cannot be reviewed here. *See, e.g., Hawes v. Mahalley*, 2020 WL 1508267, at *3 (M.D. Pa. Mar. 30, 2020) (acknowledging that the PCRA statute of limitations "is an 'adequate' and 'independent' state procedural rule which is consistently applied") (quoting *Doctor v. Walters*, 96 F.3d 675, 684 (3d Cir. 1996)).

Calipo can overcome this procedural default by demonstrating either: (1) "cause" for the default and "actual prejudice" stemming from the alleged violation of federal law; or (2) that the failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman*, 501

U.S. at 750. Aside from conclusory allegations of misconduct, corruption, "severe

Constitutional violations," and "Fundamental errors," *see* ECF No. 37 at 5, Calipo advances no

compelling argument to establish that a fundamental miscarriage of justice will occur if this

Court does not consider her claims.[3] Instead, Calipo appears to assert – again, in entirely

conclusory fashion – that cause exists to overcome her procedural default because "[a]ll prior

counsel [were] ineffective for failing to raise, litigate, or preserve" those claims. ECF No. 37-1

at 5. Calipo does not cite any evidence or caselaw to support this allegation.

      The United States Supreme Court has recognized that, in certain circumstances, counsel's

ineffectiveness in failing to properly preserve claims for review in state court may suffice to

constitute "cause" to excuse a procedural default. *See Carrier*, 477 U.S. at 488-89. However, "a

claim of ineffective assistance" must generally "be presented to the state courts as an

independent claim before it may be used to establish cause for a procedural default." *See id.* at

489. In other words, to overcome appellate counsel's failure to raise specific issues on direct

appeal, Calipo needed to present the state PCRA court with an independent claim that appellate

counsel rendered ineffective assistance by failing to appeal those precise issues. Because she

failed to do so, she cannot establish cause and prejudice for her procedural default of Grounds 6

through 61. Moreover, as noted above, her conclusory averment that counsel failed to preserve

---

[3] To establish a "miscarriage of justice" for purposes of overcoming procedural default, the petitioner must present evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Schlup v. Delo*, 513 U.S. 298, 316 (1995). The "miscarriage of justice" exception only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Schulp*, 513 U.S. at 316. Based on the Court's review of Calipo's arguments and the trial record, there is no question that this is not the type of extraordinary case in which she can overcome the default of her claims by way of the miscarriage of justice exception.

those claims is not supported anywhere in the record. Accordingly, those claims cannot be

reviewed in the instant proceeding and must be dismissed.

      C.     Merits

      Having disposed of those claims which are procedurally defaulted, five claims remain for

review on the merits. Each will be analyzed in turn.

          1.  Ground 1: Sufficiency of the Evidence

      Calipo first challenges the sufficiency of the evidence relied upon to support her

conviction. She argues:

> I was denied my Constitutional right to due process as the Court erred in
> convicting me when the Commonwealth failed to provide proper weight
> and sufficiency of weight of evidence of fundamental fairness, to prove
> beyond a reasonable doubt to support the guilty verdict on Counts One
> through Eight. Lacking evidences that the Appellant placed an aerosol
> can in her oven, or made false/fraudulent claims to commit insurance
> fraud.

ECF No. 37-1 at 1. Because the Superior Court denied this claim on its merits on direct appeal,

AEDPA's deferential standard of review applies. Calipo must show that the state courts'

adjudication of this claim was contrary to or an unreasonable application of clearly established

federal law or based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

      The "clearly established Federal law" governing sufficiency of the evidence claims is set

forth in the United States Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979).

Under *Jackson*, evidence is sufficient to support a conviction if, "after reviewing the evidence in

the light most favorable to the prosecution, *any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original).

"*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence

presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to

ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (quoting *Jackson*, 443 U.S. at 319).

In rejecting Calipo's sufficiency of the evidence claim, the Superior Court applied the Pennsylvania equivalent of the *Jackson* standard. *See Calipo*, 2018 WL 2437499. *See also Evans v. Court of Common Pleas, Delaware Cnty.*, 959 F.2d 1227, 1233 (3d Cir. 1992) (noting that the test for sufficiency of the evidence is the same under both Pennsylvania and federal law). Because the Superior Court applied the correct legal standard, its adjudication satisfies review under the "contrary to" clause of § 2254(d)(1). *See, e.g., Williams*, 529 U.S. at 405-06. Therefore, the only remaining question is whether the Superior Court's decision amounted to an "unreasonable application" of *Jackson*. To this end, the United States Supreme Court has made clear that:

> *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury ... to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the [trial court's] verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the [trial court]." *Cavazos v. Smith*, 565 U.S. 1 (2011). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S.766 (2010)).
>
> - - -
>
> [T]he only question under *Jackson* is whether [the state court's] finding was so insupportable as to fall below the threshold of bare rationality. The state court of last review did not think so, and that determination in turn is entitled to considerable deference under AEDPA, 28 U.S.C. § 2254(d).

*Coleman*, 566 U.S. at 651, 656.

Here, the evidence at trial consisted of, among other things, testimony from the victim's acquaintances and neighbors, officers from the City of Erie Fire Department, private fire investigators, insurance agents, adjustors, investigators, and retail store employees. *See Calipo*,

2018 WL 2437499. As recounted above, a private fire investigator supplied detailed testimony concerning the origin of the fire, including that he observed "an aerosol container on the bottom [of the stove] with a rack 'smashed down on top' of the container to hold it in place, and a very small amount of clothing." *Id.* The plunger of the can was missing, "which would have allowed the aerosol to come out violently, like 'an explosion-type of a fireball,' after the oven was turned on and the contents of the can under pressure had been sufficiently heated." *Id.* The investigator concluded that the can and the clothing had been intentionally placed in the oven to start a fire. *Id.* The investigator's testimony was paired with evidence that Calipo was likely the only person with access to the house, had made misrepresentations in the procurement of an insurance policy on the house, had been present in the house only an hour before the fire, and misrepresented the contents of the house. *Id.* After exhaustively recounting the trial evidence, the trial court concluded in its Rule 1925(a) opinion that it "[was] obvious from the foregoing testimony [that] Appellant was the person who intentionally started the fire at her residence and in so doing, recklessly placed others in danger of death or bodily injury, including the firefighters, police and responding personnel actively engaged in fighting the fire." *Id.* The trial court further concluded that "[t]he record amply established Appellant presented statements to Allstate in support of her insurance claim for loss; the statements contained false, incomplete or misleading information about facts or things material to Appellant's claim, and Appellant did so knowingly and with the intent to defraud." *Id.* The Superior Court adopted these conclusions and incorporated them into its opinion denying Calipo's direct appeal. *Id.*

Although Calipo argues, in general terms, that all the testimony presented at trial was perjured and the product of judicial or prosecutorial misconduct, she has made no effort to identify evidence in the record indicating that the state court's reliance on this testimony "was so

insupportable as to fall below the threshold of bare rationality." *Coleman*, 566 U.S. at 656. Moreover, while she insists that there was no "evidence[] that [she] placed an aerosol can in her oven, or made false/fraudulent claims to commit insurance fraud," ECF No. 37-1 at 1, it is axiomatic that "merely pointing to contrary evidence is not sufficient to meet [her] burden on an insufficiency of the evidence claim." *Harper*, 2020 WL 1532288, at \*9 (quoting *McClendon v. Singh*, 2013 WL 669748, at \*10 (N.D. Cal. Feb. 25, 2013) ("Petitioner's argument does no more than point to a conflict in the evidence that the jury was entitled to decide, which evidentiary dispute is insufficient to establish the knowing use of false evidence.")). Rather, Calipo must show "that there is no evidence that would support a rational juror finding [she] was the perpetrator." *Id.* As the recitation of the facts by the state courts well demonstrates, Calipo has failed to meet this burden. Accordingly, habeas relief is unwarranted as to this claim.

2. Ground 2: Right to Presence

In her second ground for relief, Calipo claims that the trial court "denied [her] Constitutional right to due process, fair trial, and right to face accuser as the Court convicted me In Absentia." ECF No. 37-1 at 1. Calipo contends that the court's decision to proceed on day three of her trial without her presence precluded her from testifying, presenting witnesses, or assisting with her defense at trial. *Id.*

The United States Constitution guarantees a right to presence at critical stages of a criminal trial. *Illinois v. Allen*, 397 U.S. 337, 338 (1970). However, a defendant may waive her right to presence at trial, either expressly or by voluntarily failing to appear. *Taylor v. U.S.*, 414 U.S. 17, 20 (1973). In rejecting her claim on direct appeal, the Superior Court applied the Pennsylvania equivalent of the federal standard, noting that "a defendant may, by his actions, expressly or implicitly waive the right to be present at trial." *Calipo*, 2018 WL 2437499 (citing

17

*Commonwealth v. Wilson*, 712 A.2d 735, 737 (Pa. 1998)). The court further explained that

"[w]hen a defendant is initially present at the time the trial commences, then flees or fails to

attend further proceedings, he or she is deemed to have knowingly and voluntarily waived his or

her right to be present, and the trial court has the full authority to continue with the trial." *Id.*

(quoting *Wilson*, 712 A.2d at 737). Because the Superior Court applied the correct legal

standard, its adjudication was not "contrary to" clearly established federal law. 28 U.S.C. §

2254(d)(1). *See, e.g., Williams*, 529 U.S. at 405-06.

   Nor did the Superior Court's decision amount to an "unreasonable application" of *Illinois*

and its progeny. In denying relief, the court noted the following facts:

> On September 20, 2016, the second day of trial, when the Court recessed
> for lunch at 11:49 a.m., the Court reminded trial participants not to
> discuss the case with anyone. Proceedings resumed at 1:05 p.m. An
> initial mid-afternoon recess occurred from 2:26 p.m. to 2:42 p.m. The
> Court was apprised Appellant spoke with the media at some point during
> the interval between the beginning of the luncheon recess and the
> conclusion of the initial mid-afternoon recess. When proceedings
> reconvened at 2:42 p.m., outside the presence of the jury the Court
> confronted Appellant about speaking with the media during the trial, and
> directed her to refrain from doing so. During the exchange between the
> Court and Appellant, there were no outward signs there was anything
> wrong with Appellant; Appellant participated in the exchange; and she
> was responsive to the Court's inquiries. Following the initial mid-
> afternoon break, the proceedings resumed without incident. At
> approximately 4:00 p.m., the Court recessed until 9:30 a.m. the
> following morning.
>
> The next morning, Wednesday, September 21, 2016, Appellant failed to
> appear for trial by 9:30 a.m. A delay in the proceedings ensued while the
> Commonwealth and counsel for Appellant attempted to ascertain
> Appellant's whereabouts. Neither Appellant nor a representative of
> Appellant had advised the Court that Appellant would be delayed or
> absent, or provide the Court with any explanation as to Appellant's
> whereabouts. At 11:33 a.m., with the jury waiting in the jury room, the
> Court went on the record to receive any update from counsel. The
> Commonwealth advised detectives had learned that, late the previous
> evening, Appellant had requested transport to a local hospital under an
> assumed name, and was subsequently admitted. Counsel for Appellant

> advised Appellant left a voicemail for him at the office at 7:00 a.m.,
> which Appellant's counsel did not receive until later in the morning
> when Counsel returned to the office during the delay in proceedings due
> to Appellant's absence.

*Calipo*, 2018 WL 2437499 (citations to the record omitted). Based on these facts, the Superior

Court concluded that the trial court "properly exercised its discretion in continuing the trial *in*

*absentia.*" *Id.* As explained by the Court:

> Appellant displayed manipulative behaviors during the case including
> the submission of multiple hybrid filings, and speaking with
> representatives of the media. She spoke with the media during trial after
> the Court reminded her not to do so. Appellant made no effort to notify
> the Court of the reason for her absence. The Court had no information
> about whether Appellant would be returning to trial, or when. The jurors
> had already been selected and sworn, and numerous witnesses had
> testified over the preceding two days of trial. It would have been
> impractical to have suspended proceedings further on the chance
> Appellant might notify her counsel or the court of the reason for her
> absence, or reappear. The Court did not abuse its discretion in
> determining Appellant knowingly and voluntarily waived her right to be
> present at trial and in resuming the trial *in absentia.*

*Id.*

Reviewing the state courts' factual findings through AEDPA's deferential lens, the Court

finds that Calipo has failed to present any evidence to overcome the presumption of correctness

attached to those findings, much less clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Nor has she confronted the Superior Court's legal reasoning or identified any United States

Supreme Court precedent that the Superior Court unreasonably applied. As such, her

constitutional challenge to the trial court's decision to continue her trial *in absentia* is meritless.

### 3. Grounds 3 and 5: Evidentiary Issues

Calipo next contends that the trial court violated her right to due process by "admitting at trial the testimony and all evidence relating to a 2011 fire at the Appellants residence" and "the alleged statement the Appellant made at her Allstate Corporation Examination Under Oath." ECF No. 37-1 at 2-3. A state evidentiary ruling is "contrary" to clearly established law if it applies "a rule that contradicts the governing law set forth by the Supreme Court or is inconsistent with a Supreme Court decision in a case involving materially indistinguishable facts." *Bronshtein v. Horn*, 404 F.3d 700, 723 (3d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)) (internal quotations omitted). The ruling amounts to an "unreasonable application" of clearly established law if it is "so obvious that a clearly established rule applies to [the] given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. 415, 419-20 (2014)). Finally, the ruling amounts to an unreasonable determination of the facts if the evidence was so prejudicial that its admission violated fundamental due process and the right to a fair trial. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

In rejecting her evidentiary claims on direct appeal, the Superior Court applied Pennsylvania Rule of Evidence 404(b) to Calipo's challenge to the admissibility of evidence that a prior fire had occurred at her residence. The court noted that this evidence was relevant because it "supplied background information of the events which led to the charges of insurance fraud, . . . formed part of the history and natural development of Appellant's actions, and its probative value outweighed any prejudice to Appellant." *Calipo*, 2018 WL 2437499. As to the statements that Calipo provided during her Examination Under Oath, the court noted that this record was correctly admitted "under the business records exception to the hearsay rule at Pa. R.E. 803(6)." *Id.* The court explained that the record "was prepared by a Registered

Professional Court Reporter" and "was kept and maintained [in] the regular course of Allstate's business activity" as part of Allstate's "regular business protocol." *Id.* The court also noted that the record was admissible as the statement of a party opponent pursuant to Pa. R.E. 803(25). *Id.*

While Calipo maintains that each of these rulings violated her right to fundamental due process, she has failed to identify any clearly established United States Supreme Court precedent to support her claim. *Allison v. Superintendent Waymart SCI*, 703 Fed. Appx. 91, 97 (3d Cir. 2017) (noting that a habeas petitioner bears the burden of "identifying facially contradictory Supreme Court precedent, or precedent that obviously forbids" the admission of prejudicial evidence). Rather, she simply recites the general proposition that evidence or statements at trial may, under certain circumstances, be so prejudicial as to violate a defendant's fundamental right to a fair trial. While this is undoubtedly true, Calipo has made no attempt to demonstrate that this rule applies in her case; namely, that the trial court's balancing of the probative value and potential prejudice of the evidence at issue was "objectively unreasonable" based on Supreme Court precedent. *Allison*, 703 Fed. Appx. at 98 (citing *Williams*, 529 U.S. at 409). Because she has failed to do so, her evidentiary claims must be denied.

4. Ground 4: Sentencing Merger Issues

Finally, Calipo argues that her due process rights were violated at sentencing because the trial court failed to merge several "identical" counts for purposes of determining her sentence. Section 9765 of Pennsylvania's Sentencing Code provides:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

21

42 Pa. Const. Stat. § 9765.  Calipo maintains that the trial court violated § 9765 because Count

Two (Arson Endangering Property) and Count 4 (Recklessly Endangering Another Person)

should have merged with Count One (Arson Endangering Persons) and Count Eight (Insurance

Fraud – False information in Application) should have merged with Count Seven (Insurance

Fraud – False Statement).  ECF No. 37-1 at 2-3.

     As a general proposition, "habeas challenges to a state court's sentencing discretion are

unreviewable by a federal court provided that the sentence lies within the statutory guidelines, is

not based upon arbitrary considerations, and the defendant's constitutional rights were not

violated." *Woodley v. Kerestes*, 2017 WL 2362492, at \*6 (M.D. Pa. May 31, 2017) (citing

*Estelle*, 502 U.S. at 67–68 (explaining that federal habeas courts are not permitted to review

questions of state law)).  This is because violations of state law, standing alone, will not entitle a

petitioner to federal habeas relief, absent a showing that those violations are so great as to be of a

constitutional dimension.  *Estelle*, 502 U.S. at 67–68.  Thus, a challenge to a state court's

discretionary decision on a sentencing issue, including the application of § 9765, is not ordinarily

cognizable in habeas review.  *Raven v. Warden, SCI Rockview*, 2019 WL 3001633, at \*10 (M.D.

Pa. Apr. 9, 2019); *Woodley*, 2017 WL 2362492, at \*6.  Calipo has not cited any caselaw to cast

doubt on this well-established proposition.

     Even if Calipo's merger claims were cognizable, they lack merit.  The Superior Court

considered her merger argument in detail on direct appeal and concluded that each of the crimes

at issue had at least one distinct criminal element.  *Calipo*, 2018 WL 2437499.  As noted by the

court, the arson charge at Count 2 required proof of the intentional destruction of property for the

sake of collecting insurance, an element that did not exist in Count 1.  *Id.*  Conversely, Count 1

required the intentional starting of a fire which recklessly placed another in danger, including

firefighters, an element not present in Count 2. *Id.* Moreover, the reckless endangerment charge at Count 4 required the government to prove that Calipo engaged in conduct that placed specific neighboring residents in danger from the fire, a distinct element from either of the arson charges. *Id.* Similarly, the crime of insurance fraud at Count 8 required proof that Calipo provided misleading or false information on an application for insurance coverage, whereas Count 7 required proof that Calipo provided false statements while pursuing a claim on an existing policy. *Id.* Based on this analysis, the Superior Court determined that the elements and factual basis underlying each crime were sufficiently distinct to prevent them from merging at sentencing. *Id.*

In evaluating the Superior Court's determination, "principles of comity suggest that this Court should defer to the state Superior Court's review of this discretionary aspect" of Calipo's sentence. *Raven*, 2019 WL 3001633, at *11. Calipo has not cited any Supreme Court precedent – or, indeed, any other caselaw – suggesting that the Superior Court misinterpreted clearly established federal law or rendered an unreasonable determination of the facts. As such, "the Superior Court's finding that the trial court legally and thoughtfully imposed the consecutive sentences merits the deference of this Court." *Id.* No habeas relief is warranted.

V.    Certificate of Appealability

A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying

23

constitutional claim, "a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Here, the Court concludes that jurists of reason would not find it debatable whether each of Petitioner's claims should be denied for the reasons given herein. Accordingly, a certificate of appealability will be denied.

VI.     Conclusion

For the reasons set forth herein, Calipo's Petition is denied, and no certificate of appealability should issue. An appropriate order follows.

RICHARD A. LANZILLO
United States Magistrate Judge

Dated: March 22, 2022

24